## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANDREA E.,

        *Plaintiff,*

  vs.                                      Case No. 21-2330-EFM

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Andrea E. seeks judicial review of a final decision by Defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. Having reviewed the record, the Court affirms the Commissioner's final decision for the reasons stated more fully below.

### I.      Factual and Procedural Background

Plaintiff filed her application for SSI on February 22, 2019, for an alleged disability beginning on June 1, 2012. She later amended her alleged onset date to July 9, 2018. She alleged that she suffers from multiple physical and mental impairments, including but not limited to schizophrenia, depression, PTSD, and anxiety. Her claim was denied at the initial level on June

7, 2019, and at reconsideration on January 2, 2020.  Plaintiff filed a written request for a hearing, which was granted.  The hearing was held by telephone (because of the COVID-19 pandemic) before an Administrative Law Judge ("ALJ") on February 2, 2021.  Plaintiff testified at the hearing, as did a vocational expert and Plaintiff's mental health case manager.

In a written decision following the hearing, the ALJ found that Plaintiff was not disabled under the Act at any time up to the date of the decision.  He found that Plaintiff had not engaged in any substantial gainful activity since her application date, and that she had the severe impairments of bilateral carpal tunnel syndrome, fibromyalgia, kidney disease, seizures, schizophrenia, depression, anxiety, post-traumatic stress disorder (PTSD), and substance abuse. The ALJ found, however, that none of these impairments or any combination thereof met the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.[1]  He further found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work:

> she can lift and carry up to ten pounds occasionally and lift or carry less than ten pounds frequently, stand and/or walk for two hours out of an eight-hour workday, and sit for six hours out of an eight-hour workday. The claimant should never climb ladders, ropes and scaffolds; and can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance on narrow, slippery or erratically moving surfaces. The claimant can frequently handle, finger and feel bilaterally. The claimant should never work at unprotected heights, with moving mechanical parts or operate a motor vehicle. The claimant is able to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a low stress work environment with no fast-paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes. The claimant can occasionally respond to and have interaction with supervisors and coworkers, and never with the general public.

The ALJ then found that while Plaintiff was not able to perform any past relevant work, considering her age, education, work experience, and RFC, there existed jobs in significant

---

[1] 20 CFR 416.920(d), 416.925 and 416.926.

numbers in the national economy that Plaintiff could perform.  The ALJ thus found Plaintiff was not disabled as defined by the Act.

Following this decision, Plaintiff sought review by the Appeals Council.  The Appeals Council denied review on May 27, 2021, making the ALJ's decision the final decision by the Commissioner.  Plaintiff has therefore exhausted her administrative remedies.  She timely seeks review of the Commissioner's final decision from this Court.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[2]  The Court must therefore determine whether the Commissioner made factual findings that are supported by substantial evidence in the record and applied the correct legal standard to those factual findings.[3]  "Substantial evidence . . . is 'more than a mere scintilla.' "[4]  "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[5] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[6]  However, courts "also do not accept 'the findings of the Commissioner' mechanically or affirm those findings 'by isolating facts and labeling them as substantial evidence, as the court[s] must scrutinize the entire record in

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)).

[4] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[5] *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229).

[6] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

determining whether the Commissioner's conclusions are rational.' "[7]  "Evidence is not substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion."[8]

"An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[9] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[10]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[11] The steps are designed to be followed in order.[12]  If it is determined, at any step of the process, that the claimant is or is not disabled, further evaluation is unnecessary.[13]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3)

---

[7] *K.I. v. Kijakaz*i, 2021 WL 4149087, at *1 (D. Kan. 2021) (alteration in original) (quoting *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012)).

[8] *Id.* (quoting *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005)).

[9] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citations omitted).

[10] *Barkley v. Astrue*, 2010 WL 3001753, at *2 (D. Kan. 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920).

[11] *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); see 20 C.F.R. § 404.1520(a)(4).

[12] *Barkley*, 2010 WL 3001753, at *2.

[13] *Id.*; *Lax*, 489 F.3d at 1084 (citing *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)).

whether the severity of those impairments meets or equals one of a designated list of impairments.[14]  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[15]

Upon determining the claimant's RFC, the Commissioner turns to steps four and five, which require the Commissioner to determine whether the claimant can either perform past relevant work or can generally perform other work that exists in the national economy, respectively.[16]  The claimant bears the burden in steps one through four to prove an impairment or combination of impairments that prevents the performance of past relevant work.[17]  The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, based on the claimant's RFC and other factors, the claimant could perform other work in the national economy.[18]

### III.    Analysis

Plaintiff has three arguments as to why the ALJ's decision is unsupported by substantial evidence.  First, Plaintiff argues that the ALJ erred at Step 3 in failing to find that her schizophrenia, PTSD, depression or anxiety met the severity required for one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Second, Plaintiff contends that the ALJ erred in finding the testimony and statements of her medical sources unpersuasive.  Finally,

---

[14] *Lax*, 489 F.3d at 1084 (citations omitted).

[15] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)).

[16] *Id.* (citing *Williams*, 844 F.2d at 751).

[17] *Lax*, 489 F.3d at 1084 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)).

[18] *Id.* (quoting *Hackett*, 395 F.3d at 1171).

Plaintiff contends that the ALJ's RFC finding is unsupported by substantial evidence.  The Court examines each of these contentions in turn.

## A.      Listings

The Listings, found in 20 C.F.R. Part 404, Subpart P, Appendix 1, "were designed to operate as a presumption of disability that makes further inquiry unnecessary."[19]  A plaintiff's impairment meets a listing if it satisfies "*all* of the specified medical criteria."[20]  The ALJ here considered, among others, whether Plaintiff met Listing 12.03 (schizophrenia), 12.04 (depression or bipolar disorder), 12.06 (anxiety disorder), or 12.15 (trauma related disorder), and found that none of these listings were satisfied because Plaintiff did not meet the "paragraph B" criteria required for each.[21]  In order to meet the paragraph B criteria, the plaintiff must have an extreme limitation of one, or a marked limitation of two, of the following areas of mental functioning: the ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; or (4) adapt or manage oneself.[22]

The ALJ found that Plaintiff had a moderate limitation in understanding, remembering, and applying information, a marked limitation in her ability to interact with others, a moderate limitation in concentrating, persisting, and maintaining pace, and a moderate limitation in adapting and managing herself.  Plaintiff challenges the ALJ's determinations on the latter three.

---

[19] *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing 20 C.F.R. § 416.925).

[20] *Id.* at 530 (emphasis in original).

[21] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A plaintiff may also attempt to argue that she met the "paragraph C" criteria, but Plaintiff here chooses not to do so.

[22] *Id.*

1.    *Interacting with Others*

Interacting with others "refers to the abilities to relate to and work with supervisors, co-workers, and the public."[23]  Plaintiff assets that the ALJ should have found that she had an extreme, rather than marked, limitation in this ability.  The ALJ noted the record reflected that Plaintiff had difficulty getting along with others, including authority figures, and had ongoing irritability and no social activities.  But the ALJ ultimately concluded that Plaintiff only had a "marked" limitation in her ability to interact with others because, at several times in the record, she is described as presenting as pleasant and calm.

Plaintiff accuses the ALJ of "cherry-picking" the record.  She cites a Seventh Circuit decision to highlight that "the very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated."[24]  Plaintiff further cites numerous examples of her not interacting well with others. But the ALJ did not find here that Plaintiff's bipolar disorder or any other of her mental ailments had been cured, or that she had perfect ability to interact with others.  In fact, he concluded quite the opposite; that Plaintiff still had marked limitations in her ability to interact with others, based on her recorded difficulties getting along with authority figures and reports of her ongoing irritability.   The ALJ, however, did not find this limitation was complete, or extreme, based on several treatment notes that describe Plaintiff as presenting as pleasant and calm.  The ALJ did not single out these parts of the record for undue attention, but rather considered them as part of the whole of the evidence as to Plaintiff's

---

[23] *Id.* § 12.00(E)(2).

[24] *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (citations omitted).

ability to interact with others.  The ALJ's determination as to Plaintiff's marked limitations in her ability to interact with others is supported by substantial evidence.

      2.     *Concentrating, Persisting, and Maintaining Pace*

Concentration, persistence, or maintaining pace "refers to the abilities to focus attention on work activities and to stay on-task at a sustained rate."[25]  The ALJ found that Plaintiff had a moderate limitation in this ability.  He noted that Plaintiff had a variable attention span and generally did not finish what she started.  Plaintiff's treatment records, however, generally reflected a normal attention span and concentration.  In addition, the ALJ noted Plaintiff's report that she could drive a car, which the ALJ found requires a good ability to pay attention.

Plaintiff largely focuses on this last piece in her attack on the ALJ's decision.  She concedes that she checked a box for "drive a car" on a March 2019 function report, but stresses that her license is suspended and that she was told not to drive following a seizure in 2019.  Neither of these limitations, however, are related to her ability to concentrate or focus her attention.  Thus, Plaintiff's ability to drive a car, which does require good concentration, is substantial evidence in support of the ALJ's finding of only a moderate limitation.

The ALJ also cited multiple treatment records of Plaintiff that find she has normal attention span and concentration.  Plaintiff complains that the ALJ failed to consider her own reports that she had consistent trouble concentrating, that she is in a "hopeless situation," or that she has difficulty understanding basic questions from her case manager.  But the ALJ was perfectly entitled to rely on objective medical evidence of Plaintiff's ability to concentrate rather than Plaintiff's

---

[25] 20 C.F.R. Pt. 404, Subpt. P, App. 1.

own reports.[26]  Plaintiff further notes that Dr. Mueller stated that Plaintiff's physical symptoms would "interfere with attention and concentration."  This, however, is consistent with the ALJ's finding of a moderate limitation in this area.  Substantial evidence supports the ALJ's decision as to Plaintiff's ability to concentrate, persist, and maintain pace.

### 3.    Adapting and Managing Oneself

Adapting and managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting."[27]  The ALJ found that Plaintiff had a moderate limitation in this ability.  Plaintiff's function reported noted that she does not handle stress or changes in routine well, but the ALJ found import in her reports that she could care for her own personal needs and prepare food for herself.  The ALJ also noted that while some of Plaintiff's records reflect "poor insight and fair judgment," others reflect normal functioning.

Plaintiff challenges this finding by reciting a litany of instances she believes show that she is incapable of adapting and managing herself, such as her reports that she eats mostly ice, that she sought to live outside because of an argument with her sister, and her various difficulties maintaining employment because of conflicts with her supervisors.  It is not this Court's role to reweigh the evidence or substitute its judgment for that of the Commissioner.[28]  Rather, the Court must consider whether the ALJ has relied on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," or substantial evidence.[29]  The evidence cited by the

---

[26] See Hamilton v. Sec'y of Health & Hum. Servs. of U.S., 961 F.2d 1495, 1499 (10th Cir. 1992).

[27] 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[28] See Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co., 305 U.S. at 229).

[29] Id. (quoting Consol. Edison Co., 305 U.S. at 229).

ALJ, and recited above, is clearly adequate to support his conclusion regarding Plaintiff's ability to adapt and manage herself.

## B.    Statements of Plaintiff's Medical Sources

"The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[30]  New regulations govern the ALJ's consideration of medical source opinions.  The Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."[31]  Instead, the Commissioner will consider the persuasiveness of each medical source's opinions based on five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion.[32]  Of these, the regulations specify that supportability and consistency are the most important factors.[33]  Supportability refers to "the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)" while consistency is viewed in light of evidence from other medical and nonmedical sources.[34]

Plaintiff first disputes the ALJ's treatment of the statements of Finnian McCullough, APRN, and Dr. Nana Dodson.  In June 2020, Dr. Dodson and Mr. McCullough completed a "check

---

[30] SSR 96-8p. *See also Sitsler v. Barnhart*, 182 F. App'x 819, 823 (10th Cir. 2006).

[31] 20 C.F.R. § 404.1520c(a).

[32] *Id.* § 404.1520c(c).

[33] *Id.* § 404.1520c(b)(2).

[34] *Id.* § 404.1520c(c)(1)-(2).

the box" form indicating their belief that Plaintiff had met Listing 12.03 (schizophrenia) since 2003, with marked or extreme limitations in interacting with others and adapting or managing oneself.  They also found that Plaintiff would miss four or more days of work per month and was unable to work.  The ALJ found this opinion "vague," as it did not specify whether the assigned limitations were marked or extreme.  The opinion was further rendered on a check box form with minimal supporting explanation.  Finally, the ALJ concluded it was not consistent with the record as a whole which showed a normal psychiatric condition and findings that Plaintiff's depression and anxiety were "well controlled."

Plaintiff accuses the ALJ of failing to view this opinion in light of the record as a whole, which she believes supports it.  But the ALJ did consider the whole of the record in finding this opinion unpersuasive, including numerous findings of Plaintiff's normal memory, intact cognitive function, normal attention and concentration, fair insight and judgment, and the finding that Plaintiff's depression and anxiety were well-controlled.  Further, the ALJ did not overlook, as Plaintiff contends, the supporting explanation of these medical providers for their opinion.  Rather, the ALJ found their supporting explanation—which was largely based on Plaintiff's *own* reports of auditory hallucinations, issues with mood stability, persistent sleep issues, and feelings of paranoia—inconsistent with the available objective medical evidence.[35]  The ALJ properly found that the opinion of Mr. McCullough and Dr. Dodson was unsupported and inconsistent with available objective medical evidence.

Plaintiff also disputes the ALJ's treatment of the opinion of Mr. McCullough and two nonmedical sources (Plaintiff's case manager and her SOAR representative).  These individuals

---

[35] SSA R., Doc. 9, p. 1818-19.

opined that Plaintiff had marked or extreme limitations in the paragraph B criteria.  The ALJ noted

that they supported this opinion with a discussion of the Plaintiff's vocational and treatment history

but found that their findings were not consistent with the evidence as a whole.  This included

evidence of Plaintiff's normal memory, which the ALJ found inconsistent with the opinion that

Plaintiff had a marked limitation in understanding, remembering, or applying information.  The

ALJ further relied on medical records showing a "normal psychiatric condition" and the recent

finding that Plaintiff's depression and anxiety were well controlled.  Finally, the ALJ found that

the severe social limitations noted by the opinion were inconsistent with hearing testimony

indicating that Plaintiff could live with her sister and shop in stores twice per week.

 Plaintiff once again accuses the ALJ of cherry-picking in his finding that the opinion of

McCullough and the nonmedical sources was unpersuasive.  Plaintiff complains that the ALJ

inappropriately relied on the opinions of Ms. Rose Mueller, PA, who primarily treated Plaintiff for

physical symptoms, to conclude Plaintiff showed a "normal psychiatric condition."  But both the

treatment notes from Ms. Mueller and from other mental health providers supported the conclusion

that Plaintiff had normal memory, concentration, attention, and cognitive function, among others.[36]

Further, Plaintiff's own citations to Tenth Circuit precedent indicate the untenability of her

position.  The Tenth Circuit in *Hardman v. Barnhart*[37] held that it was "improper for the ALJ to

pick and choose among medical reports, using portions of evidence favorable to his position while

ignoring other evidence."[38]  The ALJ here, however, did not "pick and choose" among medical

opinions, adopting some and ignoring others.  Rather, the ALJ specifically discussed the opinions

---

[36] *See* SSA R., Doc. 9, p. 2181.

[37] 362 F.3d 676 (10th Cir. 2004).

[38] *Id.* at 681 (citation omitted).

of Plaintiff's medical sources and found them unpersuasive for a variety of reasons. The ALJ is entitled to—and indeed required to—resolve conflicts in the record, and this Court will not overturn his decision unless it was unsupported by substantial evidence. The ALJ did not "cherry pick" the medical evidence in his decision.

Plaintiff stresses that the ALJ disputed the opinion of Mr. McCullough for "inappropriate and unpersuasive reasons," such that her testimony indicates she is able to do laundry, cook for herself, and shop in stores. But the regulations specifically provide for the consideration of how Plaintiff's symptoms affect her activities of daily living.[39] The ALJ properly considered this evidence alongside the available objective medical evidence.

Finally, Plaintiff complains that the ALJ dismissed the opinion of Plaintiff's case manager, Kinser Voderfect, without appropriate explanation. However, as Defendant points out, there is no evidence that Mr. Voderfect is a licensed healthcare worker and therefore did not render an opinion that needed to be analyzed under 20 C.F.R. § 416.920c.[40] The ALJ still discussed this opinion in part and found it was inconsistent with the available medical evidence. Therefore, Plaintiff's complaint as to the ALJ's treatment of this opinion is unfounded.

## C.     The ALJ's Determination of Plaintiff's RFC

Plaintiff believes that the ALJ's finding that she had an RFC of sedentary work was unsupported by substantial evidence. She states that she "consistently reports physical pain"

---

[39] *See* 20 C.F.R. § 416.929(a).

[40] *See* 20 C.F.R. § 416.902(i) ("Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.").

throughout the record and that the ALJ improperly discounted this.[41] She complains again that the ALJ improperly relied on her activities of daily living in considering her own reports as to her symptoms, but again, such consideration is expressly provided for by regulation.  Further, the ALJ did consider Plaintiff's reports in formulating Plaintiff's RFC.  He found her limited to sedentary work, the least physically strenuous kind of work.  This was largely supported by the opinion of Ms. Mueller and Dr. Strickland.  They opined that Plaintiff is limited to sedentary work, could sit 20 minutes at a time and stand 10 minutes at a time, could stand and walk less than two hours per day but could sit at least six hours per day, and could lift up to ten pounds.  Plaintiff believes this opinion should preclude an RFC of sedentary work, but it is largely consistent with the regulatory definition of sedentary work.[42]

The ALJ found the opinion of Dr. Strickland and Ms. Mueller was only partially persuasive.  The ALJ was not persuaded that Plaintiff needed to shift at will, take unscheduled breaks, and be absent for four or more days a month.  The ALJ cited objective imaging that showed only "small" lumbar disc protrusion, evidence of Plaintiff's normal gait, and a finding that Plaintiff was in no distress and had a normal range of motion and strength.  This is substantial evidence in support of the ALJ's RFC finding.  Plaintiff's reference to her physical therapy or her "positive straight leg raise" is insufficient to overwhelm the evidence relied on by the ALJ in his findings.

---

[41] Plaintiff appears to quibble again about the ALJ's failure to conclude her symptoms met a Listing, but the Court has already addressed this above and will not do so again.

[42] *See* 20 C.F.R. § 416.967 ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED.**

**IT IS SO ORDERED.**

This case is now closed.

Dated this 5h day of August, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE